**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

SABRINAS ATLANTIC WINDOW        Case No.: 22-18568-SMG
CLEANING AND PRESSURE             Chapter 11 – Lead Case
CLEANING, LLC,

                                   **Jointly Administered**

RACHEL EULER                      Case No.: 22-18573-SMG

         Debtors.

_____/

---

# SABRINAS ATLANTIC WINDOW CLEANING AND PRESSURE CLEANING, LLC AND RACHEL EULER'S JOINT CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION

---

*/s/ Jonathan M. Sykes*
Jonathan M. Sykes, Esq.
Florida Bar No. 7317
Michael A. Nardella, Esq.
Florida Bar No. 51265
Nardella & Nardella, PLLC
135 W. Central Blvd., Suite 300
Orlando, FL 32801
Phone: (407) 966-2680
Facsimile (407) 966-2681

*COUNSEL FOR THE DEBTORS*

Dated: February 1, 2023

## TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................... **4**

**SUMMARY OF PLAN** ...................................................................................................... **5**

**ARTICLE I: DEFINITIONS, CONSTRUCTION, AND INTERPRETATION** ................. **5**

**ARTICLE II: UNCLASSIFIED CLAIMS** ....................................................................... **11**

    **2.01. Administrative Claims and Priority Tax Claims.** ................................. 11

**ARTICLE III: CLASSIFICATION OF CLAIMS** .......................................................... **13**

    **3.01. Introduction** .......................................................................................... 13

    **3.02. Claims Against Euler** ........................................................................... 13

    **3.03. Claims Against Sabrinas** ..................................................................... 13

**ARTICLE IV: IDENTIFICATION OF CLAIMS** ........................................................... **13**

    **4.01. Impaired Class** ..................................................................................... 13

    **4.02. Unimpaired Class** ................................................................................ 14

    **4.02. Controversy Concerning Impairment** ................................................. 14

**ARTICLE V: TREATMENT OF CLAIMS** ..................................................................... **14**

    **5.01. General Unsecured Claims – Classes 1 and 3** ..................................... 14

    **5.02. Ally Financial Secured Claim – Class 2** ............................................. 15

    **5.03. Vox Secured Claim and Lendini Secured Claims – Classes 4 and 5** ......... 15

    **5.04. Equity Interest Holder– Class 6** ......................................................... 16

**ARTICLE VI: MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN** ........................................................................................................................................ **16**

    **6.01. Means for Execution and Implementation of this Plan** ......................... 16

**ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS** .................................... **17**

    **7.01. Treatment of Executory Contracts** ....................................................... 17

    **7.02. Bar to Rejection Claims** ...................................................................... 17

**ARTICLE VIII: ACCEPTANCE OR REJECTION OF THE PLAN** ............................... **17**

    **8.01. Impaired Classes Entitled to Vote.** ..................................................... 17

    **8.02. Section 1191(b) Cramdown.** ................................................................ 17

**ARTICLE IX: EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE** ........... **18**

    **9.01. Binding Effect** ...................................................................................... 18

    **9.02. Vesting of Assets** ................................................................................. 18

    **9.04. Amendments to the Plan** ...................................................................... 18

    **9.05. Post-Confirmation Retention and Payment of Professionals** ................. 18

    **9.06. Condition Precedent to the Effective Date.** ......................................... 18

**9.07     Limitations of Liability** ..................................................................... 18

**ARTICLE X: DISTRIBUTIONS; OBECTIONS TO CLAIMS** ............................................ 19

**10.01. Distributions Under the Plan** ................................................................ 19

**10.02. Duty to Disgorge Overpayments** ............................................................ 21

**10.04. Settlement of Objections to Claims** ........................................................ 22

**10.05. No Interest on Claims** ........................................................................... 22

**10.06. Setoffs by the Debtor; No Waiver** ........................................................... 22

**10.07. Procedures for Treating and Resolving Disputed and Contingent Claims** ......... 22

**ARTICLE XI: RETENTION OF JURISDICTION** ................................................................ 23

**11.01. Jurisdiction** ........................................................................................ 23

**11.02. Examination of Claims** ......................................................................... 23

**11.03. Determination of Disputes** ................................................................... 24

**11.04. Additional Purposes** ............................................................................ 24

**11.05. Failure of the Bankruptcy Court to Exercise Jurisdiction** ............................ 26

**ARTICLE XII: MISCELLANEOUS PROVISIONS** ............................................................. 26

**12.01. General Notices** .................................................................................. 26

**12.02. [Reserved.]** ...................................................................................... 27

**12.03. [Reserved.]** ...................................................................................... 27

**12.04. Asserting and Curing Default Under the Plan** ........................................... 27

**12.05. Revocation or Withdrawal of the Plan** .................................................... 27

**12.06. Discharge** .......................................................................................... 27

**12.07. Computation of Time** ........................................................................... 28

**12.08. Due Authorization** ............................................................................... 28

**12.09. Implementation** .................................................................................. 28

**12.10. Execution of Documents** ....................................................................... 28

**12.11. Bankruptcy Restrictions** ....................................................................... 28

**12.12 Plan Exculpation.** ................................................................................ 28

**12.13. Ratification** ....................................................................................... 29

**12.14. Integration Clause** .............................................................................. 29

**12.15. Interpretation** .................................................................................... 29

**12.16. Severability of Plan Provisions** .............................................................. 29

**12.17. Governing Law** ................................................................................... 29

**12.18. Compliance with Tax Requirements** ....................................................... 30

## INTRODUCTION

SABRINAS ATLANTIC WINDOW CLEANING AND PRESSURE CLEANING, LLC ("Sabrinas") and RACHEL EULER ("Euler"), the Debtors in the above-captioned jointly administered Subchapter V cases (together, the "Debtors") propose this Plan pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.

The Distributions to be made pursuant to this Plan to Holders of Allowed Claims, in each of the Classes of Claims against the Debtors set forth in Article III of this Plan, are set forth in Article V of this Plan.

IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN.

YOUR RIGHTS MAY BE AFFECTED. THE DEBTORS URGE ALL HOLDERS OF CLAIMS TO READ THIS PLAN IN ITS ENTIRETY AND DISCUSS IT WITH YOUR ATTORNEY AND ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE DEBTORS RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

### A. Description and a Brief History of the Business Operations of the Debtor

Euler is the sole member and owner of the company, Sabrinas Atlantic Window Cleaning and Pressure Cleaning, LLC. Sabrinas is in the business of residential window cleaning and pressure cleaning. A small portion of Sabrinas' business consists of commercial window cleaning and pressure cleaning. Euler manages and oversees the day-to-day activities of Sabrinas.

Sabrinas was formed in June of 2020 at the onset of the rising COVID crisis. Although these were difficult financial times, by early 2022, Sabrinas employed more than two dozen office workers and professional cleaners. However, On January 7, 2022, the Debtors were engaged in a lawsuit and have incurred significant costs in defending said suit. Facing the risk of defaulting on its ongoing ordinary course obligations, Sabrinas entered into three merchant cash advance agreements. The financial strain of the forementioned lawsuit and the regular cash withdrawals of the MCA loans has forced the Debtors into bankruptcy. The Debtors filed bankruptcy to reorganize and repay their debt obligations.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis for Sabrinas is attached as **Exhibit A** and a liquidation analysis for Euler is attached as **Exhibit B** (together, the

"Liquidation Analyses"). The Liquidation Analyses are based upon the Debtors' Schedules and take into account the value of all claimed exemptions by Euler and any secured claims against the Debtors' assets. Based upon the Liquidation Analyses, in a hypothetical Chapter 7 case, unsecured creditors would receive a total distribution valued at $11,815.00 for Sabrinas and $4,418.00 for Euler.

### C. Projections with Respect to the Ability to make Payments under the Plan

The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtors' business. The Debtors have provided projected financial information for Sabrinas as **Exhibit C** and projected financial information for Euler as **Exhibit D**.

### SUMMARY OF PLAN[1]

The Plan provides for the orderly payment of Allowed Claims with the Debtors' projected disposable income over the life of the Plan. The Debtors will pay in full all Allowed Administrative Claims on the Effective Date, unless otherwise agreed to by the holder of any such claim. Creditors will receive more than they would have received in a Chapter 7 liquidation.

### ARTICLE I: DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules attached to the Plan are incorporated herein.

1.1    *"Administrative Claim"* means any Claim for an Administrative Expense.

1.2    *"Administrative Expense"* means any cost or expense of administration of this case incurred on or before the Effective Date that is entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including, without limitation, Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and all fees and charges assessed against the Debtor's Estate under Chapter 123 of Title 28, United States Code.

1.3    *"Allowed"* means, when used with respect to any Claim, other than a Fee Claim (which are governed by Section 2.01 of the Plan), or any portion thereof, the portion of such

---

[1] This Summary is intended solely to provide an overview of the Plan. The Summary shall not be binding on the Debtors, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

Claim (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed within the period fixed by the Bankruptcy Court, the Plan, or applicable Bankruptcy Rules, or (ii) any objection to its allowance has been settled, withdrawn, or overruled by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan.  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim or Allowed Administrative Claim shall not include or accrue interest on the amount of such Claim or Administrative Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

      **1.4**     ***"Ally Financial"*** means the Euler's secured creditor, Ally Financial, Inc.

      **1.5**     ***"Ally Financial Secured Claim"*** means the Claim of Ally Financial, Inc. in Euler's Bankruptcy Case, which Claim is secured by the Euler's 2018 Jaguar E-PACE with vin number SADFL2FX2J1Z01436.

      **1.6**     ***"Bankruptcy Code"*** means Title 11 of the United States Code.

      **1.7**     ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, or such other court having jurisdiction over this case.

      **1.8**     ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure.

      **1.9**     ***"Business Day"*** means any day other than a Saturday or a Sunday or any other day on which on which the majority of commercial banks located in Fort Lauderdale, Florida are required or authorized to close.

      **1.10**     ***"Cash"*** means legal tender of the United States of America or Cash equivalents, including but not limited to checks, bank deposits, or other similar items.

      **1.11**     ***"Claim"*** shall have the meaning provided in section 101(5) of the Bankruptcy Code.

      **1.12**     "***Class***" means a category of holders of Claims as set forth in the Plan.

      **1.13**     ***"Collateral"*** means any property of the Debtors encumbered by a valid and enforceable Lien to secure the payment of a Claim.

      **1.13**     ***"Confirmation Date"*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

      **1.14**     ***"Confirmation Hearing"*** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code on confirmation of the Plan.

**1.15** *"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code and which is in form and content acceptable to the Debtors.

**1.16** *"Consensual Plan"* means the Plan to the extent it is confirmed in accordance with Section 1191(a) of the Bankruptcy Code.

**1.17** *"Creditor"* shall have the meaning provided in section 101(10) of the Bankruptcy Code.

**1.18** *"Debtors"* means, Rachel Euler and Sabrinas Atlantic Window Cleaning and Pressure Cleaning, and shall also include, where applicable, the Debtors from and after the Effective Date, as applicable, pursuant to this Plan.

**1.19** *"Disallowed"* means, when used with respect to a Claim, a Claim or the portion thereof which (a) is fully and finally denied allowance in a Final Order of the Bankruptcy Court, or (b) is estimated for purposes of allocation or payment of Distributions at zero ($0.00).

**1.20** *"Disputed"* when used with a respect to a Claim means any such Claim that is not an Allowed Claim and is not a Disallowed Claim, including but not limited to any Claim that is not listed on the Debtor's Schedules or that is listed in the Debtor's Schedules as disputed, contingent or unliquidated, any Claim that is the subject of an objection filed in the Bankruptcy Court, and any Claim that is disputed by the Debtor in any litigation, lawsuit, appellate proceeding or adversary proceeding in the Bankruptcy Court or any other court of competent jurisdiction.

**1.21** *"Distribution"* means the property or money required by this Plan to be distributed to the Holders of Allowed Claims.

**1.22** *"Effective Date"* means the later of (i) the first Business Day after the date upon which all conditions precedent to the occurrence of the Effective Date set forth in Section 9.06 of the Plan have been met, or (ii) the first Business Day that falls on or after the 30th day after the Confirmation Date; *provided, however*, in the event of a stay of the Confirmation Order imposed prior to the Effective Date under applicable law, rule, or order of the Bankruptcy Court or an appellate court, in the event the Confirmation Order has not become a Final Order by virtue of the filing of any motion permitted under Federal Rules of Bankruptcy Procedure 9023 or 9024, or in the event a notice of appeal is filed on or before the deadline for filing an appeal of the Confirmation Order, the Debtors may, at its sole option and sole discretion, defer the Effective Date until a date that is not later than fourteen (14) days following entry of a Final Order denying any motion under Federal Rules of Bankruptcy Procedure 9023 or 9024, or in the event of an appeal, fourteen (14) days after affirmance of the Confirmation Order, by filing a notice of such deferment in the Bankruptcy Case. Nothing in this Plan shall limit the Debtor' rights to oppose or waive any stay of the Confirmation Order or request the posting of a bond as condition to any such stay.

**1.23** *"Euler Estate"* means Euler's estate in the Euler Bankruptcy Case created pursuant to section 541 of the Bankruptcy Code.

**1.24** *"Euler Bankruptcy Case"* means the bankruptcy case no. 22-18573 in the Southern District of Florida initiated under chapter 11 of the Bankruptcy Code.

**1.25** *"Euler Petition Date"* when used in relation to EULER, or her respective Estate, means November 3, 2022.

**1.26** *"Euler Projected Disposable Income"* shall mean the projected income that is received by Euler and that is not reasonably necessary to be expended for the payment of reasonable necessary expenses of Euler.

**1.27** *"Executory Contract"* means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

**1.28** *"Fee Application"* means an application or motion, as appropriate, for the allowance or payment of a Fee Claim.

**1.29** *"Fee Claim"* means a Claim by a Professional made pursuant to sections 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code or otherwise relating to services performed by a Professional after the Petition Date and prior to and including the Confirmation Date.

**1.30** *"Final Decree"* means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

**1.31** *"Final Order"* means an order or judgment of the Bankruptcy Court that is (a) an order or judgment as to which the time to file a notice of appeal, a petition for certiorari, or a motion permitted under Federal Rules of Bankruptcy Procedure 9023 or 9024 has expired and as to which no such appeal, certiorari proceedings or motion shall then be pending or (b) in the event that a notice of appeal, petition for certiorari or a motion permitted under Federal Rules of Bankruptcy Procedure 9023 or 9024 is timely filed, such order is no longer subject to any such appeal, certiorari proceedings or motion.

**1.32** *"Fora"* means the creditor Fora Financial Advance, LLC.

**1.33** *"Holder"* means a Person who is the legal or beneficial owner of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means the legal or beneficial owner of a Claim or Interest in such class or of such type.

**1.34** *"Impaired Class"* shall mean any Class whose members are Holders of Claims that are impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.35** *"IRS Tax Claim"* shall mean the Claim of the Internal Revenue Service as evidenced by its Proof of Claim number 6 filed in the Euler Bankruptcy Case.

**1.36** *"Lendini"* means the creditor Funding Metrics, LLC d/b/a Lendini.

**1.37** *"Lendini Secured Claim"* means the alleged Secured Claim of Lendini as described in Lendini's proof of claim number 4 filed in the Sabrinas Bankruptcy Case.

**1.38** *"Lien"* has the meaning provided in Bankruptcy Code section 101(37) and shall include, without limitation, a "statutory lien" as defined in Bankruptcy Code section 101(53) and a "judicial lien" as defined in Bankruptcy Code section 101(36).

**1.39** *"Nonconsensual Plan"* means the Plan to the extent it is confirmed in accordance with Section 1191(b) of the Bankruptcy Code.

**1.40** *"Ordinary Course of Business"* shall have the meaning given to such term as utilized in Section 363(b) of the Bankruptcy Code.

**1.41** *"Person"* means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

**1.42** *"Plan"* means this Plan either in its present form or as it may hereafter be altered, amended or modified from time to time.

**1.43** *"Priority Tax Claim"* means a claim that is entitled to a priority in payment pursuant to subparagraph (8) of section 507(a) of the Bankruptcy Code.

**1.44** *"Professional"* means any professional employed in accordance with a Final Order entered in the Bankruptcy Case under sections 327 or 1103 of the Bankruptcy Code.

**1.45** *"Pro Rata Share"* means a fractional interest with (i) the amount of the Claim as the numerator, and (ii) the total amount of all Claims in the same Class as the denominator. Claims that are Disallowed at the time a Pro Rata Share is calculated according to the terms of the Plan shall not be included in the calculation of the Pro Rata Share.

**1.46** *"Rejection Bar Date"* means the day that is 30 days after the Confirmation Date.

**1.47** *"Rejection Damage Claim"* means a Claim by a party to an Executory Contract with the Debtors that has been rejected by one of the Debtors pursuant to this Plan or a prior Final Order of the Bankruptcy Court entered in this case.

**1.48** *"Reorganized Debtors"* shall mean Rachel Euler and Sabrinas as of the Effective Date.

**1.49** *"Reorganized Debtor Euler"* shall mean Euler following the Effective Date.

**1.50** *"Reorganized Debtor Sabrinas"* shall mean Sabrinas following the Effective Date.

**1.51**    *"Sabrinas"* means Sabrinas Atlantic Window Cleaning and Pressure Cleaning, LLC.

**1.52**    *"Sabrinas Bankruptcy Case"* means bankruptcy case no. 22-18568 in the Southern District of Florida initiated under chapter 11 of the Bankruptcy Code.

**1.53**    *"Sabrinas Estate"* means Sabrinas' estate in the Sabrinas Bankruptcy Case created pursuant to section 541 of the Bankruptcy Code.

**1.54**    *"Sabrinas Petition Date"* when used in relation to SABRINAS, or its respective Estate, means November 3, 2022.

**1.55**    *"Sabrinas Projected Disposable Income"* shall mean the projected income that is received by Sabrinas and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Sabrinas.

**1.56**    *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors in their respective cases in accordance with section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

**1.57**    *"Secured Claim"* means a Claim that is secured by a security interest in or a lien on property of the Sabrinas Estate or the Euler Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Sabrinas Estate's or Euler Estate's interest in such property in an amount as set forth in this Plan or determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by one of the Debtors and the Claim Holder. Secured Claims shall include Claims secured by security interests or liens junior in priority to existing security interests or liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Sabrinas Estate's or the Euler Estate's interest in such property after giving effect to all security interests or liens senior in priority.

**1.58**    *"Unsecured Claim"* means a Claim that is not a Secured Claim or an Administrative Claim.

**1.59**    *"Vehicle"* means the Euler's 2018 Jaguar E-PACE, with vehicle identification number SADFL2FX2J1Z01436, the purchase of which was financed through a loan with Ally Financial, Inc.

**1.60**    *"Vox"* means the creditor Vox Funding, LLC.

**1.61**    *"Vox Secured Claim"* means the alleged secured claim of Vox as described in Sabrinas' Schedules, Schedule D.

## ARTICLE II: UNCLASSIFIED CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified in the Plan. The treatment of such Claims is set forth in this Article II.

### 2.01. Administrative Claims and Priority Tax Claims.

#### (a) Allowance of Administrative Claims and Fee Claims

No Administrative Claim, other than a Fee Claim, will be deemed Allowed until an order allowing such Claim becomes a Final Order. Fee Claims arising on or before the Confirmation Date shall be deemed allowed upon the timely filing of a Fee Application, subject to disallowance only upon entry of a Final Order. Any Person who fails to timely and properly file and serve an objection, motion, or claim according to the requirements of this Section of the Plan and applicable rules and orders of the Bankruptcy Court shall be forever barred, enjoined, and estopped from asserting any such objection, motion, or claim or otherwise challenging any Administrative Claim or Fee Claim arising on or before the Confirmation Date or otherwise challenging the payment or allowance of any fees of Professionals that were paid or allowed on or before the Confirmation Date.

#### (b) Payment of Allowed Administrative Claims and Fee Claims

Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Confirmation Date with respect to Administrative Claims against one or both of the Debtors, or agrees to a different treatment, each Holder of an Allowed Administrative Claim and Fee Claim (other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01(c) below), and after the application of any retainer or deposit held by such Holder, shall be paid in full on or around the Effective Date. In the event that the Debtors' Cash available on the Effective Date is not sufficient to pay: (i) all Allowed Administrative Claims and Fee Claims in full, (ii) any Allowed Priority Tax Claim, and (iii) the first payment due under the Plan to Holders of Allowed Unsecured Claims; then the Holders of all Allowed Administrative Claims and Fee Claims shall be paid a Pro Rata Share of the Debtor's available Cash on the Effective Date, after deducting the amount necessary to pay Allowed Priority Tax Claims and to make the first payment due under the Plan to Holders of Allowed Unsecured Claims, with the remaining balance of any Allowed Administrative Claims and Fee Claims to be paid over the life of the Plan in accordance with Sections 507(a) and 1191(e) of the Bankruptcy Code. In the event a Fee Claim is Disallowed pursuant to a Final Order, any payment to the Holder of such Claim may be subject to refund, except as may be provided by order of the Bankruptcy Court or an appellate court.

#### (c) Administrative Claims Incurred in the Ordinary Course of Business

Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtors during the Bankruptcy Case (except for Claims of governmental units for taxes or Claims and/or penalties related to such taxes, alleged Administrative Claims arising in

tort, or Rejection Damage Claims) shall not be required to file any request for payment of such Claims. Each Administrative Claim incurred in the Ordinary Course of Business of the Debtors will be paid or otherwise resolved in accordance with the terms and conditions of the agreement, transaction or applicable law giving rise to such Administrative Claim, and any Holder of such Administrative Claim need not file an application, motion, or request to protect its rights with respect to the Claim. The Debtors reserve and shall have the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

### (d) Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim (except such Holder that agrees to different treatment) will receive the Allowed amount of such Holder's Allowed Priority Tax Claim, without post-petition interest or penalty, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, (a) on the Effective Date if such Holder has accepted the Plan, or (b) if such Holder has not accepted the Plan, in regular cash installment payments over the life of the Plan equal to the total value, as of the Effective Date, of the Allowed amount of such Claim.

### (e) Compensation of Subchapter V Trustee

Under section 330 of the Bankruptcy Code, the Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the Plan is confirmed:

i.   The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by Professionals. The Subchapter V Trustee will file a final Fee Application for compensation to be heard with the other final Fee Applications in the case.

ii.  If the Plan is confirmed on a consensual basis under Section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service ends with substantial consummation of the Plan under Section 1183(c)(1), and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other Administrative Claims, is payable in accordance with Section 2.01(b) of the Plan, unless the Subchapter V Trustee agrees to a different treatment.

iii. If the Plan is confirmed on a non-consensual basis under Section 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee will remain in place throughout the life of the Plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after the Confirmation Date. As such, the Subchapter V Trustee may file additional or supplemental Fee Applications throughout the life of the Plan. Under approval of the Subchapter V Trustee's Fee Applications in a non-consensual case, as long as all Administrative Claims of Professionals are similarly treated in the Plan, the Debtors shall pay all fee amounts due to the Subchapter

V Trustee on the Effective Date of the Plan, over the remaining life of the Plan, or forthwith.

## ARTICLE III: CLASSIFICATION OF CLAIMS

### 3.01. Introduction

**(a)**      **General.** Pursuant to section 1122 of the Bankruptcy Code, sections 3.02 and 3.03 herein set forth a designation of classes of claims and interests. A Claim or interest is classified in a particular class only to the extent that the claim or interest qualifies within the description of the class and is classified in a different class to the extent the Claim or interest qualifies within the description of that different class.

**(b)**      **Unclassified Claims**. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims have not been classified and are excluded from the classes established in sections 3.02 and 3.03 herein. The treatment accorded Administrative Expense Claims and Priority Tax Claims is set forth in Article II of this Plan.

### 3.02. Claims Against Euler

**(a)**       Class 1: General Unsecured Claims

**(b)**       Class 2: Ally Financial Secured Claim

### 3.03. Claims Against Sabrinas

**(a)**      Class 3: General Unsecured Claims

**(b)**      Class 4: Secured Claim of Vox

**(c)**      Class 5: Secured Claim of Lendini

**(d)**      Class 6: Equity Interest Holder

## ARTICLE IV: IDENTIFICATION OF CLAIMS

### 4.01. Impaired Class

**(a)**      Class 1 consists of the General Unsecured Claims of Euler. Class 1 is Impaired under the Plan.

**(b)**      Class 3 consists of the General Unsecured Claims of Sabrinas. Class 3 is Impaired under the Plan.

**(c)**      Class 4 consists of the Secured Claim of Vox. Class 4 is Impaired under the Plan.

**(d)**      Class 5 Consists of the Secured Claim of Lendini. Class 5 is Impaired under the Plan.

## 4.02. Unimpaired Class

Class 2 consists of the Ally Financial Secured Claim against Euler. This Claim is secured by a lien on the Vehicle. The amount of the Ally Financial Secured Claim, as of the Euler Petition Date, is $28,875.00, less any payments made pre-confirmation. Class 2 is unimpaired under the Plan.

Class 6 consists of the equity interest of Euler in Sabrinas. Euler owns 100% of Sabrinas.

## 4.02. Controversy Concerning Impairment

In the event of a controversy as to whether any Class of Claims is an Impaired Class under the Plan, the Bankruptcy Court, after notice and a hearing, will determine such controversy on or before the Confirmation Date. If such controversy is not resolved on or before the Confirmation Date, the Debtors' interpretation of the Plan shall govern.

## ARTICLE V: TREATMENT OF CLAIMS

Treatment of Claims and Interests in each Class is set forth in Article V of this Plan, and treatment of any Claim shall in all events refer exclusively to the Allowed amount of each respective Claim.

## 5.01. General Unsecured Claims – Classes 1 and 3

Classes 1 and 3 (and such other classes that are to receive treatment as general unsecured creditors under this Plan) shall be treated as follows, depending on whether this Plan is confirmed as a Consensual Plan or a Nonconsensual Plan:

**(a) Consensual Plan Treatment:**

In the event the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, Holders of Allowed Unsecured Claims shall be treated as described in this paragraph. Subject to the requirements of the Plan, the Bankruptcy Code, or a Final Order, Holders of Allowed Unsecured Claims shall receive approximately a Pro Rata Share of the sum of the Sabrinas Projected Disposable Income and the Euler Projected Disposable Income over a five-year period beginning on the Effective Date. If required by the terms of the Plan, the Bankruptcy Code, or a Final Order, Allowed Administrative Expense Claims, Fee Claims and Allowed Priority Tax Claims shall be paid in full prior to payment of any Allowed Unsecured Claims. The Reorganized Debtors shall make equal quarterly payments of $16,434.50 to pay their obligations under the Plan for a period of five years beginning on the Effective Date. Payments shall commence on the first day of the first full quarter that begins after the Effective Date and shall continue quarterly (every three months) for 19 additional quarters. Additionally, the Reorganized Debtors will be deemed to have

relinquished their right to object to the Claims against the Euler Estate and the Sabrinas Estate. As soon as practicable after the Effective Date, the Reorganized Debtor in the Sabrinas Bankruptcy Case will effectuate a substantial change of its business name that does not contain the words "Sabrinas" or "Atlantic" and will effectuate a substantial change of its logo that does not contain the depiction of a female witch.

### (b) Nonconsensual Plan Treatment:

In the event the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, Holders of Allowed Unsecured Claims shall be treated as described in this paragraph. Subject to the requirements of the Plan, the Bankruptcy Code, or a Final Order, Holders of Allowed Unsecured Claims shall receive approximately a Pro Rata Share of the sum of the Sabrinas Projected Disposable Income and the Euler Projected Disposable Income over a three-year period beginning on the Effective Date. If required by the terms of the Plan, the Bankruptcy Code, or a Final Order, Allowed Administrative Expense Claims, Fee Claims and Allowed Priority Tax Claims shall be paid in full prior to payment of any Allowed Unsecured Claims. The Reorganized Debtors shall make equal quarterly payments of $16,434.50 to pay their obligations under the Plan for a period of three years beginning on the Effective Date. Payments shall commence on the first day of the first full quarter that begins after the Effective Date and shall continue quarterly (every three months) for 11 additional quarters.

### 5.02. Ally Financial Secured Claim – Class 2

Euler shall continue to make regular contractual payments on the Ally Financial Secured Claim in accordance with the loan contract and related documents pertaining to such Claim, which shall remain in full force and effect.

### 5.03. Vox Secured Claim and Lendini Secured Claims – Classes 4 and 5

Class 4 consists of the alleged Vox Secured Claim against Sabrinas. Debtors dispute that Vox has a valid, perfected, enforceable lien against property of the Debtors or their bankruptcy estates. To the extent, however, that Vox holds a valid, perfected, enforceable lien against property of the Debtors or their bankruptcy estates, the alleged Vox Secured Claim is secured only by an interest in the proceeds of each future sale of Sabrinas, which has no value. Accordingly, no payment will be made on account of the alleged Vox Secured Claim. The claim of Vox, to the extent that the Claim is Allowed, will be paid as a General Unsecured Claim, in accordance with Section 5.01 of the Plan. The Debtors reserve the right to object to the Claim of Vox and to file an action to determine the Claim as unsecured.

Class 5 consists of the alleged Lendini Secured Claim against Sabrinas. Debtors dispute that Lendini has a valid, perfected, enforceable lien against property of the Debtors or their bankruptcy estates. To the extent, however, that Lendini holds a valid, perfected, enforceable lien against property of the Debtors or their bankruptcy estates, the alleged Lendini Secured Claim is secured only by an interest in the proceeds of each future sale of Sabrinas, which has no value. Accordingly, no payment will be made on account of the alleged Lendini Secured Claim. The claim of Lendini, to the extent that the Claim is Allowed, will be paid as a General Unsecured

Claim, in accordance with Section 5.01 of the Plan.  The Debtors reserve the right to object to the Claim of Lendini and to file an action to determine the Claim as unsecured.

### 5.04. Equity Interest Holder– Class 6

On and after the Effective Date, Euler shall retain her full 100% interest in Sabrinas.

## ARTICLE VI: MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 6.01. Means for Execution and Implementation of this Plan

#### (a) Business Operations and Cash Flow

The Plan contemplates that the Reorganized Debtors will continue to operate the business of Sabrinas.  In the event that the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, the Reorganized Debtor in the Sabrinas Bankruptcy Case will operate under a new name and logo in accordance with the treatment described in Section 5.01 of the Plan. The Reorganized Debtors believe that the continued earnings through the operation of Sabrinas, and Euler's personal income, will be sufficient to fund the payments required to be made under the Plan.

#### (b) Funds Generated During Chapter 11

Prior to the Effective Date, and subject to the Bankruptcy Code, Final Orders of the Bankruptcy Court, and other applicable law, the Debtors shall use funds generated during the pendency of their bankruptcy cases to pay amounts due in the ordinary course (in accordance with interim cash collateral budgets and orders) and to fund payments due under the Plan on and after the Effective Date. Except as explicitly required by the Plan, the Reorganized Debtors shall have the sole and absolute discretion to use funds generated after the Effective Date without further notice or approval.

#### (c) Section 1146 Exemption

Pursuant to Section 1146(a) of the Bankruptcy Code, the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer or sale of any property of, by, or in the Debtors, pursuant to, in implementation of, or as contemplated by the Plan, or any transaction arising out of, contemplated by, or in any way related to the foregoing (including but not limited to any change in the name and logo of the Reorganized Debtor in the Sabrinas Bankruptcy Case in accordance with Section 5.01 of the Plan), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to accept and abide by the terms of the Plan and to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS

### 7.01. Treatment of Executory Contracts

In addition to an Executory Contract previously assumed or rejected by the Debtors pursuant to Final Order of the Bankruptcy Court, this Plan constitutes a motion by the Debtors to assume all Executory Contracts not expressly rejected herein or by previous Final Order of the Bankruptcy Court.

If the Bankruptcy Court has not previously entered an order approving assumption or rejection of an Executory Contract, then the Confirmation Order shall constitute a Final Order of the Bankruptcy Court approving the assumption of all Executory Contracts not expressly rejected herein or by previous Final Order of the Bankruptcy Court.

### 7.02. Bar to Rejection Claims

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, the Sabrinas Estate or the Euler Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtors on or before the Rejection Bar Date. Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtors, the Reorganized Debtors, the Sabrinas Estate, the Euler Estate or any of their assets and properties. Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

## ARTICLE VIII: ACCEPTANCE OR REJECTION OF THE PLAN

### 8.01. Impaired Classes Entitled to Vote.

Only the Holder of an Allowed Claim in an Impaired Class may vote to accept or reject the Plan, and each such Holder must vote separately. No other voting is permitted.

### 8.02. Section 1191(b) Cramdown.

If the Impaired Claims fail to accept the Plan in accordance with Bankruptcy Code section 1191(a), the Debtors will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1191(b). The Debtors assert that the Plan provides for fair and equitable treatment of all Classes of Claims. The Debtors reserve the right to amend the Plan as may be necessary to obtain confirmation of the Plan under Bankruptcy Code section 1191(b).

## ARTICLE IX: EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 9.01. Binding Effect

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, all former, present and future Holders of Claims, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case. Confirmation of the Plan binds each Holder of a Claim to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan, receives money or property under the Plan or is otherwise treated under the Plan, or was listed on Debtors' Schedules.

### 9.02. Vesting of Assets

Except as otherwise provided in this Plan and the Confirmation Order, any and all property and assets (including any and all claims and causes of actions) of the Sabrinas Estate shall vest in the Reorganized Debtor in the Sabrinas Bankruptcy Case and any and all assets of the Euler Estate shall vest in and other transferred to the Reorganized Debtor in the Euler Bankruptcy Case in accordance with the terms of the Plan free and clear of all Claims, Liens, encumbrances, charges and other interests. Commencing on the Effective Date, the Reorganized Debtors may deal with such property and assets and conduct business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtors by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, except as explicitly provided in the Plan or the Confirmation Order.

### 9.04. Amendments to the Plan

The Debtors reserve all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Bankruptcy Code.

### 9.05. Post-Confirmation Retention and Payment of Professionals

After the Confirmation Date, and except as otherwise provided in this Plan, the Debtors may retain and pay professionals on such terms as the Debtors may deem reasonable without approval of the Bankruptcy Court or the consent of any party. Persons who served as professionals to the Debtors prior to the Confirmation Date may also continue to serve the Debtors after the Confirmation Date.

### 9.06. Condition Precedent to the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors is a condition precedent to the Effective Date.

### 9.07 Limitations of Liability

The Debtors, and the Reorganized Debtors, for the purpose of consummating and implementing the transactions and acts contemplated by this Plan, shall have no liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document relating to, rising out of or in connection with the Plan.

## ARTICLE X: DISTRIBUTIONS; OBECTIONS TO CLAIMS

### 10.01. Distributions Under the Plan

(a)    **Consensual Plan**. If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, the service of the trustee appointed under Subchapter V of Chapter 11 (the "Subchapter V Trustee" or "Trustee") in the case shall terminate when the Plan has been substantially consummated. As such, the Reorganized Debtors shall make all payments under the Plan, including any deposits required by the Plan to be distributed on confirmation.  Subject to Rule 9010, and except as otherwise provided herein, all distributions under a Consensual Plan shall be made by the Reorganized Debtors to the Holder of each Allowed Claim at the address of such Holder as listed on the Schedules and/or Proof of Claim as of the Confirmation Date unless the Debtors or Reorganized Debtors have been notified in writing of a change of address, including by the filing of a proof of Claim by such Holder that provides an address different from the address reflected on the Schedules.  Unless expressly provided in the Plan or the Confirmation Order, post-petition interest and fees shall not accrue on or after the Euler Petition Date or Sabrinas Petition Date on account of any Claim

(b)    **Nonconsensual Plan.** If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, except as otherwise provided in the Plan or in the order confirming the Plan, the Subchapter V Trustee shall make payments to creditors under the Plan. As such, the following provisions shall apply to all claims and disbursements made by the Subchapter V Trustee under the plan:

1.    On or before the Effective Date, the Debtors shall file with the Court as a supplement to the Plan and provide notice to all creditors, a list of all the creditors who will be receiving payments under the Plan, the total amount to be paid to each creditor under the Plan (inclusive of all allowed interest and fees) and the payment terms and schedule for each creditor under the Plan (the "Plan Supplement").

2.    The Reorganized Debtors shall timely pay to the Subchapter V Trustee all funds needed to make payments to creditors under the Plan. If the Reorganized Debtors fail to timely make any Plan payment to the Subchapter V Trustee, the Trustee may file and serve a notice of delinquency upon the Debtors and the Debtors' attorney. The Reorganized Debtors shall have 45 days from the date of the notice of delinquency to make all payments due under the plan, including any payments that become due within the 45-day period. If the Reorganized Debtors are seeking to cure the delinquency in a modified plan the Reorganized Debtors must file a motion to modify the confirmed plan within 45 days of the date of the notice of

delinquency. If the Reorganized Debtors are not current with Plan payments on the 45th day after the date of the notice of delinquency or has not filed a motion to modify within that time period, the Subchapter V Trustee will file and serve a report of non-compliance and may thereafter seek the dismissal or conversion of the case to Chapter 7.

3.   Within two (2) weeks of receiving the funds from the Reorganized Debtors to make the Plan payments, the Subchapter V Trustee will disburse the amounts collected from the Reorganized Debtors to the Holders of Allowed Claims pursuant to the treatment in their respective classes as indicated in the Plan and Plan Supplement.

4.   All payments under the Plan will be made by the Subchapter V Trustee to the Holder of each Allowed Claim at the address of such Holder as listed on the Schedules and/or Proof of Claim, unless the Subchapter V Trustee has been notified in writing of a change of address.

5.   Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation Date without leave of the Bankruptcy Court. Any amendment to a Claim filed after the Confirmation Cate shall be deemed Disallowed in full and expunged without any action by the Subchapter V Trustee unless the Holder of such Claim has obtained prior Court authorization for the filing of such amendment. The Subchapter V Trustee shall have no obligation to recognize any transfer of any Claim after distributions have started.

6.   Unless expressly provided in the Plan or the Confirmation Order, post-petition interest and fees shall not accrue on or after the Euler Petition Date or Sabrinas Petition Date on account of any Claim.

(c)   **Means of Cash Payment.** Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made by checks drawn on or wire transfers from a domestic bank.

(d)   **Delivery of Distributions.** All Distributions by check shall be deemed made at the time such is duly deposited in the United States mail postage prepaid. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtors or the Subchapter V Trustee, as applicable, are timely notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest. Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Reorganized Debtors or the Subchapter V Trustee, as applicable, in writing on or before thirty (30) days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the Reorganized Debtors or the Subchapter V Trustee, as applicable, for Distribution to other Holders of Claims pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred. The Reorganized Debtors or the Subchapter V Trustee, as applicable,  may employ or contract with other Persons as reasonably determined by the Reorganized Debtors or

the Subchapter V Trustee, as applicable, to assist in or make the Distributions required under the Plan. **The Reorganized Debtors or the Subchapter V Trustee, as applicable, and their agents and professionals are under no duty to take any action to either attempt to locate any Holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim.**

(e)     **Fractional Dollars; De Minimis Distributions.** Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. No payment of less than five dollars ($5.00) shall be made with respect to any Allowed Claim, and the Reorganized Debtors or the Subchapter V Trustee, as applicable, shall retain any such payment and shall deposit same into a pool for redistribution to other Holders of Allowed Claims in the same Class.

(f)     **Unclaimed Property.** Any Distributions that are unclaimed shall be distributed to other Holders of Claims pursuant to the terms of the Plan.

(g)     **Payments on Business Days**. In the event any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 10.02. Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Reorganized Debtors or the Subchapter V Trustee, as applicable, failing which, the Reorganized Debtors or the Subchapter V Trustee, as applicable, may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction. Any such excess payment(s) shall be held by the Holder in constructive trust for the benefit of the Reorganized Debtors.

### 10.03. Objections to Claims

In the event this Plan is confirmed under Section 1191(b) of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable, shall have the right to object to any Claims and file any actions to determine the validity, priority or extent of any alleged Liens (other than Claims or Liens that are deemed Allowed under the Plan), except as provided in Section 2.01 of the Plan with respect to Administrative Claims and Fee Claims.

An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of

Claim or other representative identified and designated on the proof of Claim or any attachment thereto for receipt of notices; (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

### 10.04. Settlement of Objections to Claims

From and after the Effective Date, the Reorganized Debtors are authorized to compromise all Claims, Disputed Claims, and Liens and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise or release, without further order of the Bankruptcy Court or consent of any party.

### 10.05. No Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date when such Disputed Claim becomes an Allowed Claim. To the extent any Holder of an Allowed Claim is entitled to interest accruing on or after the Petition Date pursuant to the terms of this Plan, a Final Order of the Bankruptcy Court or by separate agreement between the Debtors and the Holder, such interest shall accrue and be payable at the applicable Contract Rate, unless otherwise specified in this Plan.

### 10.06. Setoffs by the Debtor; No Waiver

Except as otherwise set forth in the Plan, the Debtors may, but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made pursuant to the Plan in respect of such Claim, any Claim or Cause of Action of any nature whatsoever that the Debtors or Reorganized Debtors may have to the fullest extent permitted under applicable law. Any dispute related to the setoff or recoupment rights of the Debtors or Reorganized Debtos shall be determined by the Bankruptcy Court. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such Claims or Causes of Action that the Debtors or Reorganized Debtors may have against such Holder or any affiliate of such Holder.

### 10.07. Procedures for Treating and Resolving Disputed and Contingent Claims

**(a) No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan, only Holders of Allowed Claims, and Holders of Fee Claims deemed Allowed in accordance with Section 2.01 of the Plan, shall receive Distributions under the Plan. Any Distribution made to the Holder of an Allowed Claim shall be returned to the Reorganized Debtors or the Subchapter V Trustee, as applicable, in the event that the Claim becomes Disputed or Disallowed.  The Holder of a Disputed or Disallowed Claim is not entitled to receive a distribution on account of its Claim

unless and until, and only to the extent that, such Claim is Allowed in accordance with the terms of this Plan, the Confirmation Order and applicable bankruptcy law.

**(b)    Claim Estimation.** Claims may be estimated to the extent permitted under Bankruptcy Code section 502(c). The Debtors may request estimation of any Claim pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Claims are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any Claim in accordance with Bankruptcy Code section 502(c), the amount so estimated shall constitute either the amount of such Claim, subject to any pending Claim objection, or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism provided for in the Plan or by the Bankruptcy Court.

**(c)    Allowance of Claims Subject to Bankruptcy Code Section 502(d).** Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

## ARTICLE XI: RETENTION OF JURISDICTION

### 11.01. Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order. The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against the Debtors and to enforce all Causes of Action and any related counterclaims, cross-claims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.

### 11.02. Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination or reconsideration of Claims that have been allowed, including for the purposes of voting, and the determination of any objections as may be filed to Claims. The failure by the Debtors to object

to, or to examine, any Claim for the purposes of voting will not be deemed a waiver of the right of the Debtors (or their successors and assigns) to object to, or to re-examine, such Claim in whole or in part.

### 11.03. Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the assets of the Debtors, (b) disputes concerning the allowance of Claims, (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

### 11.04. Additional Purposes

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

**(a)**    hear and determine any modification of the Plan pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

**(b)**    hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated thereunder, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

**(c)**    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the Plan;

**(d)**    enforce    all    orders,    judgments,    injunctions,    releases,    exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

**(e)**    hear and determine all disputes involving the existence, nature, or scope of injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

**(f)**    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the

Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

**(g)** construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

**(h)** adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

**(i)** enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtors or to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

**(j)** hear and determine all questions and disputes regarding title to or recovery of the assets and property of the Debtors;

**(k)** enter a Final Decree closing any or all of the Bankruptcy Case;

**(l)** correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan and the Confirmation Order including the adjustment of the date(s) of performance under the Plan and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan and such other documents may be substantially realized thereby;

**(m)** enter, implement or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

**(n)** hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of Professionals retained by the Debtors shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

**(o)** hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

**(p)** hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

**(q)** hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims;

**(r)** hear and determine any objection to any Claim (including any Administrative Claim), including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

**(s)** allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) and to re-examine Claims that have been allowed for purposes of voting;

**(t)** hear and determine any Cause of Action and any collection or settlement matters related thereto;

**(u)** hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

**(v)** hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

### 11.05. Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

### ARTICLE XII: MISCELLANEOUS PROVISIONS

### 12.01. General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

**-to the Debtors:**

Rachel Euler
3925 Monarch Lane
Coconut Creek, FL 33073

With a copy to:

Jonathan M. Sykes, Esquire
Nardella & Nardella, PLLC
135 W. Central Blvd., Suite 300
Orlando, FL 32801
jsykes@nardellalaw.com

**12.02. [Reserved.]**

**12.03. [Reserved.]**

**12.04. Asserting and Curing Default Under the Plan**

Except as otherwise provided in the Plan, if the Debtors default under the provisions of the Plan, any Creditor or party in interest desiring to assert a default will provide the Debtors and their counsel with written notice of the alleged default. The Debtors will have thirty (30) days from receipt of written notice to cure the alleged default. If the default is not cured, any Creditor or party in interest may then file with the Bankruptcy Court, and serve on the Debtors and their counsel, a motion to compel compliance with the applicable provision of the Plan, or otherwise seeking such remedies as may be available to such party in interest under the Bankruptcy Code or other applicable law. The Bankruptcy Court, on finding a material default, will issue orders compelling compliance with the pertinent provisions of the Plan, or providing such other relief as the Court may order. Nothing in the Plan shall be deemed a waiver on the part of any party in interest to seek to assert any such remedies as described in this Section 12.04 upon default by the Debtors under the Plan.

**12.05. Revocation or Withdrawal of the Plan**

The Debtors reserve the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Debtors revoke or withdraw this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors or any other Person.

**12.06. Discharge**

**(a)     Discharge under a Consensual Plan**.  If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, the Confirmation Order shall operate as a discharge and release of any and all liabilities, debts, Claims, Security Interests, encumbrances, rights, interests, and Liens of and against the Debtors and property of the Debtors that arose before the Confirmation Date to the fullest extent allowed under Section 1141(d)(1)(A) of the Bankruptcy Code, effective as of the Confirmation Date.  Without in any way limiting the foregoing, a discharge under this section of the Plan shall operate as a full and final discharge and release of any and all debts without regard to whether such debt may be excepted from discharge under Sections 523 or 727 of the Bankruptcy Code.

**(b)     Discharge under a Nonconsensual Plan**.  If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, the Debtors shall receive a discharge of any and all debts, Claims and Liens to the fullest extent allowed under, and in accordance with the terms of, Sections 1192 and 1141(d)(1)(A) of the Bankruptcy Code.

### 12.07. Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 12.08. Due Authorization

Each and every Holder of an Allowed Claim that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 12.09. Implementation

The Debtors may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 12.10. Execution of Documents

Upon application by the Debtors, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

### 12.11. Bankruptcy Restrictions

From and after the Effective Date with respect to the Debtors, the Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code, the Confirmation Order, or this Plan may specifically provide otherwise. No monthly operating reports will be filed after the Effective Date; however, the Debtors shall provide the U.S. Trustee such financial reports as may be required by applicable law.

### 12.12 Plan Exculpation.

Neither the Debtors, Reorganized Debtors, the Subchapter V Trustee, nor any of their respective employees, partners, affiliates, advisors, professionals, attorneys or agents, shall have or incur any liability to any Holder of a Claim for any act or omission in connection with, related to, or arising out of, the Bankruptcy Case, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan and the Sale, the administration of the Plan or the Distributions under the Plan, except for willful misconduct or gross negligence.

### 12.13. Ratification

The Confirmation Order will ratify all transactions effected by the Debtors during the pendency of the Bankruptcy Case.

### 12.14. Integration Clause

This Plan is a complete and integrated statement of the binding agreement among the Debtors, the Holders of Claims, and other parties in interest upon the matters herein. Parole evidence shall not be admissible in an action regarding the Plan or its provisions.

### 12.15. Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation. Nothing herein shall be deemed as a judicial admission by the Debtors. Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 12.16. Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtors, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtors consent. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.17. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Florida shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

**12.18. Compliance with Tax Requirements**

      In connection with this Plan, to the extent applicable, the Debtors in making Distributions in accordance with the terms and conditions of this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all such Distributions shall be subject to such withholding and reporting requirements. The Debtors may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Debtors the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtors to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Debtors the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Debtors to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with this Plan. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

                                        *Rachel Euler*

**RACHEL EULER, individually and on behalf of SABRINAS ATLANTIC WINDOW CLEANING AND PRESSURE CLEANING, LLC**

**<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

**In re:**

| | |
|---|---|
| **SABRINAS ATLANTIC WINDOW CLEANING AND PRESSURE CLEANING, LLC,** | **Case No.: 22-18568-SMG** **Chapter 11 – Lead Case** |
| | **Jointly Administered** |
| **RACHEL EULER** | **Case No.: 22-18573-SMG** |
| **Debtors.** | |
| _____/ | |

**LIQUIDATION ANALYSIS FOR SABRINAS ATLANTIC**
**<u>WINDOW CLEANING AND PRESSURE CLEANING</u>**

| <u>Assets</u> | **Estimated Liquidation Value as of the Petition Date,** |
|---|---|
| Cash and cash equivalents | $1,568.00 |
| Deposits and prepayments | $3,770.00 |
| Accounts receivable | $4,502.00 |
| Office furniture, fixtures, and equipment; and collectibles | $1,975.00 |

Total: $11,815.00

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

| | |
|---|---|
| **SABRINAS ATLANTIC WINDOW** | **Case No.: 22-18568-SMG** |
| **CLEANING AND PRESSURE** | **Chapter 11 – Lead Case** |
| **CLEANING, LLC,** | |
| | **Jointly Administered** |
| **RACHEL EULER** | **Case No.: 22-18573-SMG** |
| Debtors. | |

_____/

**LIQUIDATION ANALYSIS FOR RACHEL EULER**

| Assets | Estimated Liquidation Value as of the Petition Date |
|---|---|
| Real estate | $1.00 |
| Vehicle | $4,417.00 |

Total: $4,418.00

## EXHIBIT C

## Sabrinas' Budget Projections for 1 Year

### February 2023 through July 2023

| Month | 2/1/2023 | 3/1/2023 | 4/1/2023 | 5/1/2023 | 6/1/2023 | 7/1/2023 |
|---|---|---|---|---|---|---|
| Beginning Cash on Hand | | | | | | |
| Total Income | $156,000.00 | $184,000.00 | $134,000.00 | $135,000.00 | $120,000.00 | $85,000.00 |
| Total Expenses | $152,637.00 | $180,833.00 | $128,853.00 | $130,233.00 | $121,233.00 | $89,233.00 |
| NET Income | $3,363.00 | $3,167.00 | $5,147.00 | $4,767.00 | -$1,233.00 | -$4,233.00 |
| **Projected Disposable Income** | **$3,363.00** | **$3,167.00** | **$5,147.00** | **$4,767.00** | **-$1,233.00** | **-$4,233.00** |
| | | | | | | |
| **INCOME** | | | | | | |
| **Services** | | | | | | |
| | | | | | | |
| **EXPENSES** | | | | | | |
| Labor/window washers | $92,000.00 | $113,000.00 | $80,000.00 | $80,000.00 | $78,000.00 | $53,000.00 |
| Wages | $48,000.00 | $53,500.00 | $41,000.00 | $41,000.00 | $35,000.00 | $30,000.00 |
| Insurance | $219.00 | $219.00 | $219.00 | $219.00 | $219.00 | $219.00 |
| Advertising/Marketing This can | $4,550.00 | $5,700.00 | $2,400.00 | $3,000.00 | $1,500.00 | $800.00 |
| Office/Admin Expenses | $4,290.00 | $4,400.00 | $1,650.00 | $2,000.00 | $1,500.00 | $1,200.00 |
| Rent | $2,063.00 | $2,063.00 | $2,063.00 | $2,063.00 | $2,063.00 | $2,063.00 |
| Subchapter V Trustee | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Utilities | $1,515.00 | $1,951.00 | $1,521.00 | $1,951.00 | $1,951.00 | $1,951.00 |
| **Total Expenses** | **$152,637.00** | **$180,833.00** | **$128,853.00** | **$130,233.00** | **$121,233.00** | **$89,233.00** |

### August 2023 through January 2024

| Month | 8/1/2023 | 9/1/2023 | 10/1/2023 | 11/1/2023 | 12/1/2023 | 1/1/2024 |
|---|---|---|---|---|---|---|
| Beginning Cash on Hand | | | | | | |
| Total Income | $85,000.00 | $90,000.00 | $140,000.00 | $230,000.00 | $205,000.00 | $180,000.00 |
| Total Expenses | $88,233.00 | $96,533.00 | $129,233.00 | $217,733.00 | $184,733.00 | $164,733.00 |
| NET Income | -$3,233.00 | -$6,533.00 | $10,767.00 | $12,267.00 | $20,267.00 | $15,267.00 |
| **Projected Disposable Income** | **-$3,233.00** | **-$6,533.00** | **$10,767.00** | **$12,267.00** | **$20,267.00** | **$15,267.00** |
| | | | | | | |
| **INCOME** | | | | | | |
| **Services** | | | | | | |
| | | | | | | |
| **EXPENSES** | | | | | | |
| Labor/window washers | $53,000.00 | $60,000.00 | $80,000.00 | $150,000.00 | $115,000.00 | $104,000.00 |
| Wages | $30,000.00 | $30,000.00 | $36,000.00 | $52,000.00 | $52,000.00 | $48,000.00 |
| Insurance | $219.00 | $219.00 | $219.00 | $219.00 | $219.00 | $219.00 |
| Advertising/Marketing This can | | $800.00 | $4,500.00 | $5,500.00 | $6,000.00 | $5,500.00 |
| Office/Admin Expenses | $1,000.00 | $1,500.00 | $5,000.00 | $6,000.00 | $7,500.00 | $3,000.00 |
| Rent | $2,063.00 | $2,063.00 | $2,063.00 | $2,063.00 | $2,063.00 | $2,063.00 |
| Subchapter V Trustee | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Utilities | $1,951.00 | $1,951.00 | $1,951.00 | $1,951.00 | $1,951.00 | $1,951.00 |
| **Total Expenses** | **$88,233.00** | **$96,533.00** | **$129,233.00** | **$217,733.00** | **$184,733.00** | **$164,733.00** |

## EXHIBIT D

## Euler's Budget Projections for 1 year

February 2023 through July 2023

| | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 |
|---|---|---|---|---|---|---|
| Income | | | | | | |
| Wages | 11700 | 11700 | 11700 | 9600 | 9600 | 7600 |
| Family Contribution | 125 | 125 | 125 | $125 | $125 | $125 |
| **Gross Income** | **11825** | **11825** | **11825** | **9725** | **9725** | **7725** |
| | | | | | | |
| Tax/med/social | ($2,238) | ($2,238) | ($2,238) | ($1,560) | ($1,560) | ($1,210) |
| Dental Insurance | ($11) | ($11) | ($11) | ($11) | ($11) | ($11) |
| Vision Insurance | ($2) | ($2) | ($2) | ($2) | ($2) | ($2) |
| Medical Insurance | ($303.72) | ($303.72) | ($303.72) | ($303.72) | ($303.72) | ($303.72) |
| **Total payroll exps** | **($2,555)** | **($2,555)** | **($2,555)** | **($1,876.72)** | **($1,876.72)** | **($1,526.72)** |
| | | | | | | |
| **Take home income** | **$9,270** | **$9,270** | **$9,270** | **$7,848.28** | **$7,848.28** | **$6,198.28** |
| | | | | | | |
| **Home Expenses** | | | | | | |
| Rent | ($2,000) | ($2,000) | ($2,000) | ($2,000) | ($2,000) | ($2,000) |
| Electricity | ($240) | ($240) | ($240) | ($240) | ($240) | ($240) |
| Water | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) |
| Phone | ($300) | ($300) | ($300) | ($300) | ($300) | ($300) |
| Cable/internet | ($320) | ($320) | ($320) | ($320) | ($320) | ($320) |
| Food/House supp | ($1,600) | ($1,600) | ($1,600) | ($1,000) | ($1,000) | ($800) |
| Children education cost | ($440) | ($440) | ($440) | ($440) | ($440) | ($440) |
| Personal Care | ($350) | ($350) | ($350) | ($150) | ($150) | |
| Entertainment | ($100) | ($100) | ($100) | | | |
| Life Insurace | ($180) | ($180) | ($180) | ($180) | ($180) | ($180) |
| Health Insurance | ($220) | ($220) | ($220) | ($220) | ($220) | ($220) |
| Vehicle Insurance | ($165) | ($165) | ($165) | ($165) | ($165) | ($165) |
| Pet Insurance | ($190) | ($190) | ($190) | ($190) | ($190) | ($190) |
| Pet Care | ($183) | ($183) | ($183) | ($183) | ($183) | ($183) |
| Irs Payment Plan | ($1,266) | ($1,266) | ($1,266) | ($1,266) | ($1,266) | ($166) |
| Fuel | ($260) | ($260) | ($260) | ($260) | ($260) | ($260) |
| Car Payment | ($592.00) | ($592.00) | ($592.00) | ($592.00) | ($592.00) | ($592.00) |
| Holiday | | | | | | |
| Total Expenses | $8,506 | $8,506 | $8,506 | $7,606 | $7,606 | $6,156 |
| **Projected Disposable Income** | **$764** | **$764** | **$764** | **$242.28** | **$242.28** | **$42** |

August 2023 through January 2024

| | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 |
|---|---|---|---|---|---|---|
| Income | | | | | | |
| Wages | 7600 | 7600 | $11,700 | $11,700 | $11,700 | $11,700 |
| Family Contribution | $125 | $125 | $125 | $125 | $125 | $125 |
| **Gross Income** | **7725** | **7725** | **$11,825** | **$11,825** | **$11,825** | **$11,825** |
| | | | | | | |
| Tax/med/social | ($1,210) | ($1,210) | ($2,238) | ($2,238) | ($2,238) | ($2,238) |
| Dental Insurance | ($11) | ($11) | ($11) | ($11) | ($11) | ($11) |
| Vision Insurance | ($2) | ($2) | ($2) | ($2) | ($2) | ($2) |
| Medical Insurance | ($303.72) | ($303.72) | ($303.72) | ($303.72) | ($303.72) | ($303.72) |
| **Total payroll exps** | **($1,526.72)** | **($1,526.72)** | **($2,555)** | **($2,555)** | **($2,555)** | **($2,555)** |
| | | | | | | |
| **Take home income** | **$6,198.28** | **$6,198.28** | **$9,270** | **$9,270** | **$9,270** | **$9,270** |
| | | | | | | |
| **Home Expenses** | | | | | | |
| Rent | ($2,000) | ($2,000) | ($2,000) | ($2,000) | ($2,000) | ($2,000) |
| Electricity | ($240) | ($240) | ($240) | ($240) | ($240) | ($240) |
| Water | ($100) | ($100) | ($100) | ($100) | ($100) | ($100) |
| Phone | ($300) | ($300) | ($300) | ($300) | ($300) | ($300) |
| Cable/internet | ($320) | ($320) | ($320) | ($320) | ($320) | ($320) |
| Food/House supp | ($800) | ($800) | ($1,600) | ($1,600) | ($1,600) | ($1,600) |
| Children education cost | ($440) | ($440) | ($440) | ($440) | ($440) | ($440) |
| Personal Care | | | ($350) | ($350) | ($350) | ($350) |
| Entertainment | | | ($100) | ($100) | ($100) | ($100) |
| Life Insurace | ($180) | ($180) | ($180) | ($180) | ($180) | ($180) |
| Health Insurance | ($220) | ($220) | ($220) | ($220) | ($220) | ($220) |
| Vehicle Insurance | ($165) | ($165) | ($165) | ($165) | ($165) | ($165) |
| Pet Insurance | ($190) | ($190) | ($190) | ($190) | ($190) | ($190) |
| Pet Care | ($183) | ($183) | ($183) | ($183) | ($183) | ($183) |
| Irs Payment Plan | ($166) | ($166) | ($1,266) | ($1,266) | ($1,266) | ($1,266) |
| Fuel | ($260) | ($260) | ($260) | ($260) | ($260) | ($260) |
| Car Payment | ($592.00) | ($592.00) | ($592.00) | ($592.00) | ($592.00) | ($592.00) |
| Holiday | | | | | | |
| Total Expenses | $6,156 | $6,156 | $8,506 | $8,506 | $8,506 | $8,506 |
| Projected Disposable Income | $42 | $42 | $764 | $764 | $764 | $764 |